IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-363-BO

| | |
|---|---|
| HURRICANES HOCKEY LIMITED PARTNERSHIP, ) ) ) Plaintiff, ) ) vs. ) ) TYRONE BANKS p/k/a TYE BANKS, ) and TYTANIUM MUSIC, LLC, ) ) Defendants. ) | O R D E R |

This matter is before the Court upon a Motion for Summary Judgment [DE-32] filed by Plaintiff Hurricanes Hockey Limited Partnership ("the Hurricanes") and upon a Motion for Partial Summary Judgment [DE-36] filed by Defendant Tyrone Banks and Tytanium Music, LLC (collectively "Banks"). For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion for Partial Summary Judgment is GRANTED.

STATEMENT OF THE CASE

On August 7, 2009, Plaintiff filed its Complaint [DE-1] and Amended Complaint [DE-5] against Banks alleging four claims for relief – (1) Infringement of Federally Registered Marks under 15 U.S.C. § 1114(1); (2) Federal Trademark Infringement under 15 U.S.C. § 1125(a)(1)(A); (3) Common Law Unfair Competition; and (4) Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1; these four claims arise out of Banks' alleged unauthorized use of Plaintiff's protected trademarks. Plaintiff also alleges a fifth claim for relief for Declaratory Judgment under 28 U.S.C. § 2201; the Declaratory Judgement claim for relief

arises out of Plaintiff's alleged use of a song entitled *Tyrone Banks Carolina Hurricanes Song*, which Defendant created.

On October 20, 2009, Defendants filed the Answer of Defendants Tyrone Banks and Tytanium Music, LLC and Counterclaim of Defendant Tyrone Banks [DE-11]. In the Counterclaim, Banks alleges claims for Copyright Infringement, Breach of Contract, and Restitution arising out of the Hurricanes' use of Banks' work, to wit: the *Tyrone Banks Carolina Hurricanes Song*.

On July 1, 2010, the Hurricanes filed a motion seeking summary judgment in its favor on the first four claims in the Complaint and on Banks' counterclaims for breach of contract and restitution [DE-32]. Later that same day, Banks filed a Motion for Partial Summary Judgment [DE-36] on the issue of liability on the counterclaim for copyright infringement.

The parties have filed replies to the pending motions and the Court is now prepared to rule on those motions.

## BACKGROUND

Plaintiff is the owner of the National Hockey League ("NHL") Carolina Hurricanes franchise [DE-5 at ¶ 8]. Plaintiff owns several federally-registered trademarks, including, *inter alia*, the marks CAROLINA HURRICANES in standard character form, U.S. Trademark Reg. Nos. 2,336,473, and 2,254,170 (the "CAROLINA HURRICANES Marks") and stylized marks consisting of a flag with a hockey stick, U.S. Trademark Reg. Nos. 2,215,407 and 2,215,408 (the "Design Marks") (collectively, "Plaintiff's Trademarks").

Banks is a Wake County, North Carolina hip-hop musician. (Countercl. ¶1). Sometime after 2006, Banks created a song entitled *Tyrone Banks Carolina Hurricanes Song* (the "Song")

2

[DE-36-1]. Banks is the owner of the copyright in the music, lyrics, and sound recording of the Song. Id. Banks has a 50% ownership interest in Tytanium Music, LLC, which is an independent record label that has advertised, promoted, and sold the Song [DE-11], (Ans. ¶ 1).

It is undisputed by the parties that sometime in early 2007, Banks granted the Hurricanes a license to play the Song. Banks granted this license after some interplay between the parties; by the Hurricanes' own admissions, Banks gave the license after the Hurricanes had expressly requested that Banks "re-mix" the original version that he initially submitted to the organization. (Pl.'s Mem. Supp. Summ. J. 3) [DE-33].

Although the existence of *some* license to use the Song is undisputed, the parties take divergent views on the scope of that license. On the one hand, Plaintiff contends that Banks granted the Hurricanes an "unlimited license" to use the song as it saw fit. Ans. ¶ 7. Banks, on the other hand, characterizes the grant to the Hurricanes as a "limited license to play the Song in [the Hurricanes] hockey arena during home games."[1] (Def's Mem. Supp. Summ. J. 2) [DE-37].

Short segments of the Song were played from time to time in the RBC Center during the 2007-2008 hockey season. Additionally, the Hurricanes proceeded to use the Song in a television commercial on the NHL Network; the commercial was broadcast during 18 NHL games and three re-plays. (Plaintiff's Response to Defendants' Rog. No. 7). The Hurricanes also used the Song in an online video that was played 1,782 times. (Plaintiff's Response to Defendants' Rog. No. 9).

In late 2008, Banks learned through a friend that the Hurricanes were using the Song in a

---

[1] The Court takes judicial notice of the fact that the National Hockey League's Carolina Hurricanes franchise plays its home games at the RBC Center in Raleigh, North Carolina.

3

television commercial. Counsel for Banks contacted the Hurricanes on December 11, 2008, seeking compensation for past use of the Song and a written license agreement for any future use of the Song. After a follow-up communication from Banks's counsel in February 2009, the Hurricanes' General Counsel responded on February 19, 2009, stating that the Hurricanes had "interpreted Mr. Banks' [December 11, 2008] demands as revocation of our original license to use the Song" and therefore "ceased all use of the Song" [sic] [DE 37-4-1]. Several weeks later, in March 2009, Banks discovered the Hurricanes were using the Song in an online video, despite their claims of having ceased use of the Song in December of 2008. The online video was played 250 times after December 11, 2008–when the Hurricanes claimed their use of the Song had stopped (Plaintiff's Response to Defendants' Rog. No. 9).

## DISCUSSION

I.  Summary Judgment Standard

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299.

The party moving for summary judgment always bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once a motion for summary judgment is properly made and supported, to survive a summary judgment motion, the non-moving party bears the burden of production of evidence that creates an issue of material

fact on an element essential to his case and on which he will bear the burden of proof at trial. See Id. at 322. A non-movant "may not rest upon mere allegations or denials," but rather must demonstrate that a triable issue of material fact exists. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A. Plaintiff's Motion for Summary Judgment

The Hurricanes have moved for summary judgment on its claims of (1) violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) federal trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A); (3) unfair competition in violation of North Carolina common law; and (4) Unfair and Deceptive Trade Practices in violation of N.C. Gen. Stat. § 75-1.1.

Plaintiff's first three claims turn on essentially the same legal test for trademark infringement.[2] Moreover, assuming a violation of the Lanham Act is established, the fourth claim for relief (Unfair and Deceptive Trade Practices in violation of N.C. Gen. Stat. § 75-1.1.) is established as well.[3] Conveniently, then, Plaintiff's first four claims for relief all collapse into

---

[2] See Georgia-Pacific Consumer Products LP v. Von Drehle Corp., 645 F. Supp. 2d 532, 536 (E.D.N.C. 2009) ("'The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement.'") (quoting Yellowbrix, Inc. v. Yellowbrick Sol., Inc., 181 F. Supp. 2d 575, 583 (E.D.N.C. 2001)); see also Hardee's Food Sys. v. Beardmore, 1997 U.S. Dist. LEXIS 24210 at *7 (E.D.N.C. Oct. 24, 1997) (stating that the Court would deal with the statutory and common law trademark infringement and statutory and common law unfair competition claims together, "since the elements of each are so similar, and proof of statutory trademark infringement 'will, by necessity, support an additional finding that the defendant is also guilty of unfair competition.'") (quoting Birthright v. Birthright, Inc., 827 F. Supp. 1114, 1136 (D.N.J. 1993)).

[3] Under North Carolina law, "[t]rademark infringement and false designation of origin are deceptive and unfair acts; if a plaintiff proves a violation of the Lanham Act, which affected commerce, and injured plaintiff, plaintiff is entitled to summary judgment on claims brought under North Carolina's UDTP." Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., 642

5

the same legal inquiry–an inquiry that asks simply if the defendant committed trademark infringement.

In the Fourth Circuit, a trademark infringement claim requires the plaintiff to prove:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

15 U.S.C. §§ 1114, 1125(a); Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 930 (4th Cir. 1995).

However, even where a Plaintiff can establish the elements of a prima facie case for trademark infringement, federal law recognizes at least nine affirmative defenses that, if properly raised by a defendant, bar a trademark infringement claim. 15 U.S.C. § 1115(b)(1)–(9). In particular, a trademark infringement claim fails where "equitable principles, including laches, estoppel, and acquiescence are applicable." Id. at § 1115(b)(9). As the Fourth Circuit has explained: "[a]n infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463 (4th Cir 1996).

Here, a proper reading of the evidence at this stage of the proceeding establishes that Banks can raise a defense to trademark infringement. The record evidence supports the inference that the Hurricanes at least acquiesced to if not actively encouraged Banks to employ their protected marks in the Song.

---

F. Supp. 2d 493, 505 (W.D.N.C. 2009) (citing Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779, 785 (E.D.N.C. 2004).

In or about early 2007, Kris Hixson, on behalf of Banks, submitted the Song to the Carolina Hurricanes. (Banks Dep. 52-53; Soto Depo. 10). Pete Soto, director of advertising production and in-game marketing for the Hurricanes, informed Mr. Hixson that he did not like the original version of the Song. (Banks Dep. 62; Soto Dep. 10). In response, Banks then re-mixed the Song with a new beat track, which he obtained from another artist. Banks then resubmitted the Song to the Carolina Hurricanes. (Banks Dep. 66-68). After Mr. Soto listened to the new version of the Song, Banks was told he could provide a copy of the Song to Don Sill, video producer and music director for the Carolina Hurricanes. (Banks Dep. 70; Sill Dep. 33).

Encouraged by the Hurricanes' entreaties, Banks delivered a copy of the Song on compact disk to Sill. (Banks Dep. 70-72; Sill Dep. 33). Sometime thereafter, Banks and Sill conversed on the telephone. Banks contends that during this conversation, he granted the Hurricanes a limited license to play the Song at the RBC center during home games (Banks Dep. 72). Sill, on the other hand, claims that Banks granted an unlimited license for the Song's use without any material limitations. (Sill Dep. 41). This conflicting testimony, however, is largely irrelevant, when one considers the equitable defenses Banks' may raise to the Hurricanes' claims of trademark infringement.

Regardless of the scope of the license the Banks' granted, a reasonable juror might still conclude from the record that the Hurricanes' actions in critiquing the Song, acquiescing to the Song's submission to the Hurricanes music and video production unit, supplying Banks with tickets to hear the Song played at a home game in the RBC center, and approving, either expressly or impliedly, of the Song's use of the Plaintiff's Trademarks, estop the Hurricanes from claiming Banks infringed on its protected trademarks. The Court has scanned the voluminous

record and concludes that when viewed in a light most favorable to Banks, the evidence of record establishes that the Hurricanes have, "through affirmative word or deed, expressly or impliedly consent[ed] to the infringement." Sara Lee Corp., 81 F.3d at 363. Because a reasonable juror could conclude that Plaintiff's trademark infringement claims–and those claims that depend on the same legal test for trademark infringement–are barred, the Hurricanes are not entitled to summary judgment on the first four claims in the complaint.

Separate from the issue of potential defenses that Banks might raise and that the fact-finder must resolve at trial, summary judgment is also precluded at this time due to the turbidity of the oral license Banks purportedly granted to the Hurricanes. Genuine issues of material fact exist with respect to the scope of that license. Only after the evidence has been put to adversarial scrutiny and properly weighed can the intended scope of the license and the contractual relationship of the parties be conclusively established. Therefore, Plaintiff's Motion for Summary Judgment cannot be granted.

    B.    <u>Defendants' Motion for Partial Summary Judgment</u>

Banks has moved for partial summary judgment on the issue of the Hurricanes' liability for copyright infringement *after* December 11, 2008. A plaintiff "must establish two elements in a copyright infringement action: ownership of the copyright by the plaintiff and copying by the defendant." Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1065 (4th Cir. 1988).

Here, there is no genuine issue of material fact regarding Banks' claim for copyright infringement after December 11, 2008–the point at which the Hurricanes' concede that any license to use the Song that *may* have existed was revoked by Banks. See February 19, 2009 letter from Pl.'s counsel to D's counsel, [DE-37-4-1].

It is undisputed that ownership of the copyright in the Song vested in Banks sometime in early 2007 and that Banks' ownership has continued uninterrupted to the present day. Moreover, it is undisputed that <u>after</u> December 11, 2008–the absolute latest point in time to which any license to use the Song outside of the RBC center endured–the Hurricanes infringed Banks' copyright by incorporating the Song into an online video that was posted on the Hurricanes' official web site and made available for viewing by Internet users. (Pl.'s Resp. to D's Rog. No. 9). Thus, because there is no genuine issue of material fact with respect to the issue of the Hurricanes' liability for copyright infringement *after* December 11, 2008, and because Banks is entitled to judgment as a matter of law on that limited claim, Banks' Motion for Partial Summary Judgment is granted. Damages, if any, resulting from the Hurricanes' copyright infringement are genuinely disputed. Accordingly, the issue of damages must be submitted to the fact-finder at trial.

## CONCLUSION

Considering the foregoing reasons, Plaintiff's Motion for Summary Judgment [DE-32] is DENIED. Defendants' Motion for Partial Summary Judgment is GRANTED [DE-36].

SO ORDERED.

This, the 7 day of November, 2010.

*/s/ Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9

Case 5:09-cv-00363-BO   Document 45   Filed 11/09/10   Page 9 of 9